Filed 11/28/22 In re V.G. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re V.G., et al. Persons Coming Under the Juvenile Court Law. | H049579, H049590, H049616 (Santa Clara County Super. Ct. Nos. JD026015 & JD0206144) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, Plaintiff and Respondent, v. S.L., Defendant and Appellant. | |

**THE COURT[1]**

Appellant S.L. (Father) appeals from an order denying his Welfare and Institutions Code section 388 petition seeking the return of his minor children, V.G. and M.B.,[2] to his care.[3] Father also appeals the juvenile court's section 366.26 hearing order denying overnight visitation. The Santa Clara County Department of Family and Children's Services (Department) contends that Father failed to carry his burden of proof for his

---

[1] Before Greenwood, P. J., Danner, J. and Wilson, J.

[2] Father filed substantially identical section 388 petitions for each child. For the purpose of clarity, we will refer to them as a single petition.

[3] Undesignated statutory references are to the Welfare and Institutions Code.

section 388 petition, and that the juvenile court acted within its discretion in denying Father's request for overnight visitation. For the reasons set forth below, we affirm the court's November 9, 2021, and December 2, 2021, orders.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case is the latest in a series of appeals by Father, arising out of the juvenile dependency proceedings for his and D.G.'s (Mother) children, V.G. and M.B.[4] We briefly summarize earlier facts as necessary and otherwise recount only subsequent proceedings that have been included in the record of this appeal.

In September 2019, the Department removed V.G. from Mother and Father's care. The petition alleged that Mother and Father had engaged in domestic violence and that Father had physically abused V.G.'s maternal half-sibling, J.M.[5] M.B. was born approximately a month later and was also taken into protective custody. In addition to the concerns regarding J.M., V.G., and M.B., the Department had concerns that Father had physically abused his daughter from a previous relationship. The Department placed

---

[4] This is the third appeal filed in this dependency action. Father and Mother first appealed the juvenile court's jurisdiction and disposition and six-month review orders. We ordered those appeals considered together and issued a decision affirming the juvenile court's orders. (*In re J.S.* (Aug. 4, 2021) H047781, H047793, & H048549 [nonpub. opn.].) Following the 12-month hearing, Father sought an extraordinary writ setting aside the juvenile court's order terminating his reunification services with V.G. and M.B. We denied Father's writ petition and lifted our earlier stay of the juvenile court's then-pending section 366.26 hearing. (*S.L. v. Superior Court* (Jul. 26, 2021, H048869) [nonpub. opn.].) In the instant appeal we took judicial notice of the records filed in H048669, H047793, and H048549. Rather than restate the facts and procedural history, which are amply set forth in both prior opinions, we incorporate by reference our statements of factual and procedural background in those cases and will commence the factual narrative where they left off.

[5] The Department also removed V.G.'s maternal half-siblings, J.M. and J.S. Separate dependency petitions on behalf of those children are not the subjects of the instant appeal. We limit our discussion of the underlying proceedings to those directly relevant to V.G. and M.B., except as otherwise indicated.

2

V.G. and M.B. with their paternal grandparents, where they remained throughout the dependency proceeding.

At the initial jurisdictional hearing, the juvenile court sustained the petitions on the basis of domestic violence and abuse. In July 2020, Mother had an unsupervised visit with her child, J.S., after which she did not return J.S. to her father's care for several months, in violation of a court order. Father informed the Department that he did not believe he should be held responsible for Mother's violation of the court order, and that he was supportive of her decision. The Department therefore recommended continuing with supervised visitation, expressing concern that, if granted unsupervised visitation of M.B. and V.G., Mother and Father would not follow court orders and might elope with the children. By the contested six-month review hearing in September and October 2020, the juvenile court found that Father had made limited progress with his case plan, and that returning V.G. and M.B. to his care would put them at substantial risk of detriment. The juvenile court ordered V.G. and M.B. to remain in their paternal grandparents' care, and Father to continue family reunification services. Father appealed the juvenile court's orders made at the jurisdictional and six-month review hearings.

In February 2021, while Father's appeals were pending, the juvenile court held the twelve-month hearing. The Department presented evidence of recent domestic violence between Father and Mother, and recommended terminating Father's reunification services and scheduling a section 366.26 permanency planning hearing. Although the Department acknowledged that Father had participated in his case plan, it felt that he had not actively engaged or internalized the behavioral changes needed, and critically for the child abuse concerns, had not completed his 52-week child abuser's class. The Department stated that although Father and Mother had reportedly decided to live independently and asserted they were no longer in a relationship, they had moved and continued to live together. Father and Mother refused to provide the Department with their new address, thereby hindering the Department's ability to assess Father's home

3

conditions or request information regarding police intervention at his address. The Department opined that Father and Mother had not fully resolved the domestic violence issues between them and both parents continued to deny any allegations of child abuse.

At the conclusion of the 12-month hearing, the juvenile court again found that Father had made minimal progress on his case plan and that returning the children to his care would create a substantial risk of detriment to them. The court ordered that V.G. and M.B. remain in their paternal grandparents' care, terminated reunification services, and scheduled a section 366.26 permanency planning hearing. Father sought an extraordinary writ challenging the court's order terminating reunification services and scheduling the section 366.26 hearing. In May 2021, we stayed the section 366.26 hearing pending resolution of Father's appeals and writ.

In February 2021, shortly after the 12-month hearing and while his appeals and writ petition were pending, Father reenrolled in the required child abuse treatment class. However, he was terminated from the program in April 2021, due to nonattendance and outstanding fees.

In early September 2021, Father filed a section 388 petition to obtain overnight visitation and return of V.G. and M.B. with family maintenance services.[6] In support of his request, Father stated that the Department had not exercised its discretion to increase the frequency or duration of his visits although Father's visits had been going well, and that the requested order would preserve the parent-child bond. The Department and the children opposed Father's proposal. The Department instead offered to consolidate Father's three weekly two-hour visits into one six-hour visit supervised by the paternal grandparents. The court scheduled a prima facie hearing on Father's section 388 petition.

The Department filed a 366.26 report and several addendum reports prior to the scheduled hearings. Therein, the Department reported that Father had not disclosed his

---

[6] Father filed and withdrew a substantially similar section 388 petition prior to the petition at issue here.

4

current residence, though he continued to consistently visit V.G. and M.B. The Department noted that the grandparents had made statements minimizing the safety factors associated with Father's behavior. Although the grandparents were committed to keeping V.G. and M.B. in placement, and agreed to serve as prospective adoptive parents, they expressed a strong preference for legal guardianship. The Department therefore recommended guardianship as the children's permanent plan.

On November 9, 2021, the court held a hearing on Father's section 388 petition. Although the court expressed doubt that Father's section 388 petition made a prima facie showing to justify an evidentiary hearing, it nevertheless permitted Father to testify and offer other evidence. Father asserted that the change in circumstances supporting his petition was that he and Mother had moved far apart from each other and had no new reported incidents or risk of domestic violence. The children and the Department asserted that neither of these developments were sufficient to establish the prima facie showing for a section 388 petition. The Department also argued that Father had not demonstrated any behavioral changes, had not presented any proof as to when or where he had moved, and had not demonstrated that changing the court's order would be in the best interests of the children.

Father testified that although his relationship with Mother ended in November 2020, they continued to live together until March 2021, when Father moved to Sacramento. Father stated that he and Mother had a new child together, born in April 2021, and that even though he and Mother had had a "volatile, conflicting relationship at various points," they were able to peacefully have visits together at least once a week with their new child. He described their current relationship as "phenomenal," stating that Mother was "completely reasonable" with him, that he "could not be happier with the way that she has . . . recovered from what had transpired in our relationship," that he and Mother "maintain[ed] a completely civil relationship," that they had "not argued once" since separating, and that it had now been "over six months since a cross word, a

5

cross eye at each other." However, Father refused to disclose his new son's name or birthdate to the court, stating that he didn't trust the Department's counsel with that information, despite the court advising that refusing to answer those questions "doesn't reflect well on you." Father again denied that he physically abused J.M. or any of his other children, stating that the allegations were "a complete lie." Father testified that he had not continued with any services after his reunification services were terminated and had not completed any classes since the 12-month hearing held nine months earlier. Instead, Father stated that he did "a lot of reading" and researching personal growth and child development. Father offered no additional evidence other than his testimony.

After testimony from Father and arguments by the parties, the court denied Father's section 388 petition. The court noted that Father remained adamant in denying the child abuse allegations and had focused solely on the lack of domestic violence with Mother as the basis for his petition. In so doing, Father failed to demonstrate a sufficient change in circumstances to allay the court's concerns regarding V.G. and M.B.'s safety if returned to his care. Although stating that it denied Father's section 388 petition on that basis alone, the court also expressed skepticism regarding Father's credibility and resolution of the original domestic violence concerns. The court observed that Father had a tendency to exaggerate and that it was difficult to believe his testimony that his interactions with Mother were completely positive.

The court stated that Father had not presented any evidence that he had eliminated or substantially reduced the risk of domestic violence, either with Mother or in a new relationship. Father did not present any reports from service providers showing progress, nor did Father present any evidence of engaging in any new services. The court found that Father failed to demonstrate changed circumstances with respect to the domestic violence issues. Finally, the court found that Father had presented no evidence or testimony demonstrating that granting the section 388 petition would be in the children's

6

best interest. After denying Father's section 388 petition, the court continued to the 366.26 hearing.

At the 366.26 hearing, Father requested that V.G. and M.B.'s grandparents, as guardians, be permitted to allow unsupervised and overnight visits with Father. The Department and the children opposed that request, proposing instead that the grandparents be given discretion to increase the duration or frequency of Father's visits but no discretion to allow unsupervised or overnight visits. The court adopted the Department's recommendations, granted legal guardianship to the grandparents, ordered supervised visitation for Father, and dismissed the case. Father timely appealed the court's orders.[7]

## II. DISCUSSION

On appeal, Father argues first that the court erred in refusing to hold an evidentiary hearing on his section 388 petition and in refusing to return V.G. and M.B. to his care. Father asserts that he made a prima facie showing of changed circumstances, that granting his petition was in his children's best interest, and that the court abused its discretion in denying his petition. The Department counters that the juvenile court did hold a hearing on Father's section 388 petition despite finding that it was facially insufficient. The Department further argues that Father failed to demonstrate either changed circumstances or that a change would be in the children's best interest.

As to the court's visitation order, Father asserts that the court abused its discretion in denying his request for overnight visitation. The Department argues that the order was not an abuse of discretion.

---

[7] Father separately appealed the denials of his section 388 petitions for V.G. and M.B. (case numbers H049579 and H049590, respectively) and the juvenile court's orders at the 366.26 hearing (case number H049616). On the Department's motion we ordered the three appeals considered together for briefing, oral argument and disposition, and refer to them collectively as Father's appeal.

**A. The Court Did Not Abuse Its Discretion in Denying Father's Section 388 Petition**

Under section 388, a parent may petition to change or set aside a prior court order "upon grounds of change of circumstance or new evidence." (§ 388, subd. (a)(1); see also Cal. Rules of Court, rule 5.570(a).) As the petitioning party, Father bore the burden of proving, by a preponderance of the evidence, both a change in circumstances and that his proposed modification served his children's best interest. (See, e.g., *In re L.S.* (2014) 230 Cal.App.4th 1183, 1193.)

"We review the juvenile court's decision to grant or deny a section 388 petition for abuse of discretion. [Citation.]" (*In re I.B.* (2020) 53 Cal.App.5th 133, 152-153 (*I.B.*).) We " ' "will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]." ' [Citations.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318 (*Stephanie M.*).) "The denial of a section 388 motion rarely merits reversal as an abuse of discretion." (*In re Amber M.* (2002) 103 Cal.App.4th 681, 685-686.)

**1. The Court Did Not Deny Father an Evidentiary Hearing**

The juvenile court shall order a hearing regarding a section 388 petition where "it appears that the best interests of the child . . . may be promoted" by the new order. (§ 388, subd. (d).) The parent must sufficiently allege both a change in circumstances or new evidence *and* the promotion of the child's best interests. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 808 (*Zachary G.*).) The parent seeking modification must make this "prima facie showing to trigger the right to proceed by way of a full hearing. [Citation.]" (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310.) The juvenile court need not order a hearing if the allegations of the petition, liberally construed, do not make a prima facie showing of both elements. (*Zachary G.*, at p. 806.)

Father's argument that the court failed to hold an evidentiary hearing on his section 388 petition is unavailing. Although the court expressed doubt that Father's

8

petition made a prima facie showing necessary to trigger the right to an evidentiary hearing, it nonetheless proceeded with such hearing. Father testified and was given an opportunity to present other evidence, though he declined to do so. The parties each argued their respective positions regarding Father's petition. It is unclear what, if any, further evidence Father would have introduced at a lengthier hearing. Although initially intended as a prima facie hearing, it is apparent from the record that the court held a fulsome evidentiary hearing on Father's section 388 petition. However, even with the benefit of such hearing, Father failed to demonstrate either that his circumstances had changed or that granting his petition would serve his children's best interests.

### 2. Father Failed to Demonstrate a Sufficient Change in Circumstances

Father asserts that he demonstrated changed circumstances by separating from Mother, relocating to Sacramento, and maintaining a positive, conflict-free non-romantic relationship with Mother through visitation with their new infant child. The Department counters that each of the examples that Father cites, with the exception of his relocation, existed prior to the 12-month hearing, and that Father is unable to articulate a material change in circumstances that occurred after the court's operative February 2021 order terminating reunification services. Father's argument is unpersuasive.

Most of the purported changes Father relies on were known to the court when it terminated reunification services in February 2021. Father and Mother had reportedly ended their relationship several months earlier. The classes Father identified in his testimony were part of his case plan and he had participated in them prior to February 2021. Accordingly, those efforts did not have constitute changed circumstances.

The additional changes Father references, consisting of living apart from Mother and interacting civilly during weekly visits with their infant son, were insufficient for the juvenile court to find that Father had addressed the safety concerns for M.B. and V.G. or that domestic violence was unlikely to recur. Addressing the physical abuse concerns

9

first, the court observed that Father remained adamant in his denial of all child abuse allegations, notwithstanding the court previously finding those allegations to be true. Moreover, Father failed to complete the 52-week child abuser's class, despite being given the opportunity to, and testifying that he did, reenroll.

With respect to the domestic violence concerns, the court afforded little weight to Father's testimony that his relationship with Mother had improved. The court observed that domestic violence is naturally less likely to occur when one is meeting up at public locations such as Father described for his visitation with his infant, rather than actually living with a partner in the home. The juvenile court described Father's testimony as exaggerated and not credible, stating that it could not rely solely on Father's testimony to conclude that he had addressed the risk of future domestic violence. However, Father relied solely on his own testimony rather than presenting any other evidence of progress, such as reports or testimony from services providers. As the court stated, Father's evidence was insufficient for the court to find any changed behavior on Father's part. Following the termination of reunification services, Father did not voluntarily continue with therapy, engage in any additional or new services, or otherwise take any affirmative steps, to prevent abuse of V.G. and M.B., other than to reportedly read some books and conduct some independent research.

Father received nearly 18 months of reunification services between the date of the children's removal and the termination of reunification services at the 12-month hearing. He received an additional nine months of supervised visitation with children during the pendency of Father's prior appeals and prior to the 366.26 hearing. Father had ample time between the twelve-month hearing and the permanency planning hearing to demonstrate changed circumstances with respect to the child safety concerns, which he failed to do.

### 3. Father Failed to Demonstrate That Granting His Petition Would Be in the Children's Best Interest

Father also failed to establish that granting his section 388 petition would be in V.G. and M.B.'s best interests. His section 388 petition asserted that granting overnight visitation or returning the children to him with family maintenance services would be in their best interest because it would preserve the parent-child bond. On appeal, Father argues that the factors set forth in *In re Kimberly F.* (1997) 56 Cal.App.4th 519 (*Kimberly F.*) support a conclusion that returning V.G. and M.B. to his care is in their best interest. The Department argues that they do not.

In *Kimberly F.*, the juvenile court removed the children because their mother's home had become dirty and unsanitary. (*Kimberly F.*, *supra*, 56 Cal.App.4th at pp. 521-522.) Between the termination of reunification services and the permanency planning hearing, the mother cleaned her home and demonstrated she could maintain it in a sanitary condition. (*Id.* at p. 522.) On appeal, the court determined that it was the "rare" case in which denying a section 388 petition was an abuse of discretion. (*Ibid.*) The court set forth three non-exhaustive factors the trial court should consider in determining a child's best interests under section 388: "(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to both parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*Kimberly F.*, at p. 532 ["While this list is not meant to be exhaustive, it does provide a reasoned and principled basis on which to evaluate a section 388 motion"].)

The *Kimberly F.* factors do not support Father's position. As the first and third factors are closely related in this case, we address them together. The problems that brought this matter before the court, namely domestic violence and physical abuse, are among the more serious bases for dependency jurisdiction. (*Kimberly F.*, *supra*, 56

11

Cal.App.4th at p. 522; *I.B.*, *supra*, 53 Cal.App.5th at p. 154.) Throughout the dependency case, Father and Mother continued living together, despite the recurring domestic violence between them. Moreover, Father remained steadfast in vehemently denying all child abuse allegations notwithstanding the court's findings to the contrary. Father failed to meaningfully engage with his case plan throughout the proceedings, or independently engage in services after the twelve-month hearing. Taken as a whole, the record reflects a serious and continuing basis for dependency jurisdiction. Although Father did eventually separate from Mother, he remained in regular contact and did not demonstrate that the underlying problems leading to the dependency proceeding were removed or ameliorated. (*Kimberly F.*, at pp. 531-532; compare with *In re J.M.* (2020) 50 Cal.App.5th 833, 848-849 [in a dependency proceeding due to domestic violence, the first and third *Kimberly F.* factors weighed in the mother's favor where she had avoided contact with the father for over a year and maintained stable, appropriate housing and gainful employment].)

As to the relative strength of the children's relationships with Father and with their caregivers, Father had a strong bond with V.G. and M.B., generally had positive supervised visits, and the children were happy to see him. However, the children also had a strong bond with their grandparents who had been their caregivers for the past two years and who loved the children. V.G. had spent approximately half her life in her grandparents' care and M.B. had spent nearly the entirety of her life in their care. The Department observed that V.G. and M.B. thrived and appeared to feel safe in their grandparents' care and looked to their grandparents for love and support during the Department's visits. On balance, it appears that V.G. and M.B.'s bond with their grandparents is comparatively stronger than their bond with Father. Consideration of the *Kimberly F.* factors supports the juvenile court's findings regarding the best interests of the children.

Beyond the *Kimberly F.* factors, Father did not demonstrate that his requested order would advance the children's need for permanency and stability, and therefore that it was in their best interest. (*Stephanie M.*, *supra*, 7 Cal.4th at p. 317 [holding that primary consideration in determining the child's best interests is the goal of assuring stability and continuity].) In fact, Father presented no evidence or argument on this point during the hearing. While Father was appropriate during his supervised visitation, and V.G. and M.B. enjoyed their visits, the children were thriving in the care of their grandparents, who clearly adored them. Father failed to carry his burden of demonstrating that removing V.G. and M.B. from their home of the past two years, without adequately addressing the continuing concerns regarding domestic violence and physical abuse, was in the children's best interest. Accordingly, we conclude Father has not carried his burden on appeal to show that the court abused its discretion by denying his section 388 petition.

## B. The Court's 366.26 Order Limiting Father's Visitation to Was Not an Abuse of Discretion

At the 366.26 hearing, the juvenile court appointed the paternal grandparents as legal guardians for V.G. and M.B and denied Father's request for increased visitation. We review orders setting visitation terms for abuse of discretion. (*In re Brittany C.* (2011) 191 Cal.App.4th 1343, 1356.) Father contends that denying his request for overnight visitation was an abuse of discretion.[8]

When a permanent plan of legal guardianship is ordered, the court must "make an order for visitation with the parents or guardians unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child." (§ 366.26, subd. (c)(4)(C); *In re S.H.* (2011) 197

---

[8] In the proceedings below Father sought overnight and unsupervised visitation. On appeal, Father contends only that the court abused its discretion in denying his request for overnight visitation and makes no claim of error with respect to the court's denial of unsupervised visitation.

Cal.App.4th 1542, 1558 (*S.H.*).) Father sought overnight and unsupervised visitation with the children on the grounds that visitation had been going well, that increased visitation would preserve the parent-child bond, and that it was burdensome to travel between Sacramento and Gilroy. The court denied Father's request, and instead ordered that Father receive a minimum of three weekly visits for a minimum of two hours each, supervised by the grandparents. The court also gave the grandparents discretion to offer more frequent or longer supervised visitation.

In denying Father's request, the court observed that overnight visitation would be effectively the same as unsupervised visitation, and that it had "ongoing concerns about the boundaries between the grandparents and the father" and as well as concerns "about the testimony . . . today regarding father's relationship with mother." The court elaborated, stating that it was restricting Father to supervised visitation "because of the history of this case and the concerns regarding the children's safety . . . . I am concerned that when the children get older there are going to be issues, just like [Father] had with his older daughter . . . because children change and get older and their behaviors change. And I am concerned about [Father's] history of physical violence."

Father argues both that supervision would be unnecessary while the children are asleep and that the juvenile court was mistaken in stating that overnight visits would be unsupervised. Father cites to no authority that overnight visitation is automatically supervised, and that no supervision is required once children are asleep. Nor are we persuaded by his argument. As the Department notes, visitation in dependency proceedings typically follows a step-down basis, with supervised visitation being the most restrictive and overnight visitation being the least. (See, e.g.*, In re J.D.* (2021) 70 Cal.App.5th 833, 842, as mod. on den. of rehg. (Oct. 27, 2021) [describing mother's progress from supervised to unsupervised to overnight visitation]; *In re C.M.* (2012) 232 Cal.App.4th 1394, 1398.) While Father's visitation with V.G. and M.B. was positive, Father never progressed beyond monitored or supervised visitation throughout the review

14

period. It was reasonable for the court to therefore refuse to permit unsupervised or overnight visitation for the first time at the 366.26 hearing.

The juvenile court articulated valid reasons for limiting visitation, including its concerns regarding the risk of recurring domestic violence, Father's adamant denial of all child abuse charges despite prior findings, and the grandparents' minimization of the allegations against Father. Notwithstanding these concerns, the court provided for ample minimum visitation, granting the grandparents nearly unfettered discretion to increase Father's visitation by any frequency or length. Although we acknowledge that regular travel between Gilroy and Sacramento may be burdensome to Father, the focus on visitation orders at this stage in a dependency case is the interests of the children, rather than the parents. (*S.H.*, *supra*, 197 Cal.App.4th at p. 1559.) "[D]ependency law affords the juvenile court great discretion in deciding issues relating to parent-child visitation, which discretion we will not disturb on appeal unless the juvenile court has exceeded the bounds of reason." (*Id.* at p. 1557.) We perceive no such abuse of discretion in the court's visitation order.

### III.    DISPOSITION

The juvenile court's November 9, 2021, and December 2, 2021, orders are affirmed.